UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RAYMOND HURST,

           Petitioner,

                                   CASE NO. 04-CV-70863-DT
v.                             HONORABLE VICTORIA A. ROBERTS

ANDREW JACKSON,

           Respondent.

_____/


**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, AND (2) DENYING A CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS**

      Petitioner, an inmate at the Mound Correctional Facility in Detroit, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for first-degree murder and possession of a firearm during the commission of a felony which were imposed following a bench trial in the Wayne County Circuit Court in 2000. Petitioner was sentenced to life imprisonment without the possibility of parole on the murder conviction and a consecutive term of two years imprisonment on the felony firearm conviction.

      In his pleadings, Petitioner raises claims concerning the voluntariness of his police statement, the non-production of a witness, the sufficiency of the evidence, mid-trial delay, and the admission of polygraph examination testimony. For the reasons stated below, the Court denies the petition for writ of habeas corpus. The Court also denies a certificate of appealability and leave to proceed on appeal *in forma pauperis*.

1

I.    **Facts**

Petitioner's convictions stem from the shooting death of Maceo Vanover in Detroit,

Michigan at approximately 8:45 p.m. on February 13, 1999.  Vanover died from two gunshot

wounds to his left arm.

Prior to trial, the trial court conducted an evidentiary hearing to determine the

admissibility of Petitioner's police statements.  At that hearing, Detroit Police Officer Nicholas

Giaquinto testified that he first spoke with Petitioner about the shooting on February 18, 1999.

Petitioner was questioned, gave a statement, and was released.  Petitioner was re-arrested on

January 24, 2000 at 1:20 p.m. and taken to the police station.  Petitioner was not allowed to have

visitors or make telephone calls.  Officer Giaquinto came into contact with Petitioner sometime

after 2:00 p.m. on January 25, 2000.  Officer Giaquinto advised Petitioner of his *Miranda* rights

and obtained a written waiver of those rights.  Petitioner denied being involved in the shooting.

Officer Giaquinto testified that he confronted Petitioner with the discrepancies between his story

and the investigation and said that they discussed the first-degree murder charge and its penalty

of life imprisonment, but he denied threatening Petitioner.  Eventually, Petitioner agreed to take

a polygraph examination.

Petitioner was taken to the polygraph examination area at 4:00 p.m.  Officer Giaquinto

conferred with Investigator Andrew Sims about the test while Petitioner sat in another room.

Investigator Sims administered the polygraph examination sometime before 6:30 p.m.  When it

was over, Officer Giaquinto overheard Petitioner make an admission of guilt to Investigator

Sims, who obtained a written statement from Petitioner.  Officer Giaquinto then came into the

room, questioned Petitioner further, and obtained another statement at 9:40 p.m.  Officer

Giaquinto testified that Petitioner did not ask to call an attorney nor request that the questioning

2

cease.  Officer Giaquinto also testified that Petitioner had a 10th grade education and had prior contacts with the police, including two prior convictions.

Detroit Police Investigator Andrew Sims testified that he advised Petitioner of his *Miranda* rights and obtained a written waiver of those rights before conducting the polygraph examination on January 25, 2000.  He also determined that Petitioner was coherent, not under the influence of alcohol or drugs, had eaten at 4:30 p.m., and had slept from 10:30 p.m. to 8:00 a.m. After Investigator Sims conducted the polygraph examination and informed Petitioner of the results, he conducted a post-examination interview.  At that time, Petitioner made a verbal admission of guilt.  Investigator Sims told him that he needed to put it in writing and provided paper and a pen.  When Investigator Sims left the room, Petitioner wrote a statement in which he admitted shooting the victim.  Investigator Sims denied making any threats or promises to Petitioner to obtain the statement.  He also testified that Petitioner never requested a lawyer or said that he did not want to take the polygraph.

Petitioner testified that he was 25 years old and a Detroit resident.  He was arrested around 1:00 p.m. on January 24, 2000 and taken to the police station.  He was put in a room on the 5th floor for three and one-half hours.  He spoke to Officer Reynolds, but did not make a statement.  Petitioner testified that he asked to call his mother and then a lawyer, but Officer Reynolds said no.  Petitioner was taken to a holding cell on the 9th floor for the night.  He was not allowed to make phone calls or take a shower.  He did not have a bed, but he slept from midnight until 8:00 a.m.  After he awoke, he was taken to a room on the 5th floor where he was held until almost 3:00 p.m. when he met with Officer Giaquinto.  Petitioner testified that he asked to call his mother or his lawyer, but Officer Giaquinto refused his request.  Petitioner testified that he refused to make a statement despite Officer Giaquinto's repeated requests.

3

Petitioner admitted that he was not threatened or promised anything at this time.  Petitioner

testified that he initially refused to take a polygraph examination, but eventually relented

because Officer Giaquinto told him that he would be charged with murder and he was scared.

Officer Giaquinto gave Petitioner some juice and two sandwiches to eat while he arranged the

polygraph examination.

Petitioner said that he told Investigator Sims that he did not want to take the polygraph

examination, indicated that he needed to talk to a lawyer, and asked to make a call, but was told

that he was on phone restriction.  Investigator Sims then conducted the polygraph examination.

When it was over, Investigator Sims "started hollering" at him, telling him to confess or he

would be locked up for life.  This went on for 20 or 30 minutes.  Investigator Sims then gave him

paper and a pen and told him that he had to write something or he would be going straight to jail

for murder.  Petitioner wrote a statement.  Officer Giaquinto then returned, began questioning

him again, and obtained another statement.  Petitioner claimed that the statement Officer

Giaquinto wrote was not the "full truth" and did not fully correspond to his answers.

On cross-examination, Petitioner acknowledged that he had prior police contacts and that

he understood his *Miranda* rights.  He admitted that he did not tell the officers that he wanted to

call his mother so that she could call his lawyer.  Petitioner stated that he knew that he did not

have to take the polygraph examination, but agreed to take it anyway.  He acknowledged that he

could have remained silent but said that he felt like he had no choice but to make a statement.

Petitioner also read his handwritten statement, which was given to Investigator Sims, into the

record.  That statement reads as follows:

> I went in the apartment building.  He broke in my girl's apartment.  He said he
> was going to kill me and my girl so I went out on the corner and shot him.  My
> girl was going to have my baby so I had to protect her.

4

At the conclusion of the hearing, the trial court decided to admit Petitioner's handwritten statement to Investigator Sims but to exclude the statement that Petitioner subsequently made to Officer Giaquinto.  The case proceeded to trial.

At trial, victim Maceo Vanover's cousin, Freddie Putnam, testified that he had seen Petitioner at Vanover's apartment on Fisher Street.  He knew Petitioner because he used to buy crack cocaine from him.  Putnam further testified that he observed a confrontation between Petitioner and the victim about a week before the shooting.  During the confrontation, Petitioner pointed a black pistol at Vanover and said something about finding out what happened at his house.  Putnam acknowledged that there had been an unrelated shooting, which did not involve Petitioner, outside Vanover's apartment prior to the incident at issue.

Petitioner's neighbor, Jackie Pritchard, testified that Petitioner had told him that someone broke into his apartment in February, 1999 and stolen marijuana and money and that he was going to "whip his ass."  Petitioner did not identify the perpetrator of the break-in but said that "he came from the basement, the other side of the building."  Pritchard acknowledged that more than one man resided in the four-apartment complex.  Pritchard also testified that he heard four gunshots at around 8:45 p.m. on February 13, 1999 as he escorted guests from his apartment.  He looked out his front window and saw Petitioner's car and a body in the street.  Pritchard also saw Petitioner's car in the same location the day before and the day after the shooting.

The prosecution also presented testimony regarding its efforts to produce witness Lonnie White.  Detroit Police Officer Xavier White, Lonnie White's uncle, testified that Lonnie White occasionally stayed with him in February, 1999, but could not currently be located.  Officer White testified that he could not offer any information as to Lonnie White's whereabouts.  Officer Giaquinto, testified, that he took statements from Lonnie White on February 17, 1999

5

and January 26, 2000.  Officer Giaquinto contacted several of White's relatives, including his

mother an aunt, but could not locate him.  He also checked the county jails and the morgue and

attempted to ascertain a current address to no avail.  The trial court determined that the

prosecution demonstrated due diligence in their attempts to produce Lonnie White.

Officer Giaquinto also testified about Petitioner's arrest and interrogation.  Officer

Giaquinto testified that he was present when Petitioner was advised of his *Miranda* rights and

signed a waiver form.  He admitted that Petitioner was arrested in the afternoon on February 24,

2000, interrogated for four hours, and then held on the 9th floor of the police station where he

was not permitted visitors or phone calls.  Officer Giaquinto testified that Petitioner was

subsequently taken to a polygraph examination room and questioned by Investigator Andrew

Sims.  Officer Giaquinto testified that Investigator Sims sat close to Petitioner, raised his voice,

and pointed his finger at Petitioner during the interview.  Petitioner provided a handwritten

statement, which Giaquinto read into the record.  Officer Giaquinto also testified that Petitioner

gave police a statement on February 18, 1999 in which he admitted his prior confrontation with

Vanover, but denied shooting him and provided details of his whereabouts at the time of the

shooting.

Detroit Police Officer Lonze Reynolds testified that he was the first person to advise

Petitioner of his rights at 3:56 p.m. on January 24, 2000.  He was called away on another matter

and did not question Petitioner about the shooting.  Petitioner was not allowed to make any

telephone calls or visitors.

Detroit Police Investigator Andrew Sims also testified at trial.  He initially did not appear

at trial because he was out of town.  The trial court granted a six-day adjournment so that he

could appear.  Investigator Sims testified that Petitioner was brought to him at 5:45 p.m. on

6

January 25, 2000 and they began their interview at 6:10 or 6:15 p.m.  He advised Petitioner of his *Miranda* rights and his polygraph rights, and Petitioner signed the rights form at 6:30 p.m. They spoke for an hour or an hour and a half before Investigator Sims conducted the polygraph examination.  When it was completed, he questioned Petitioner again.  He did not accept Petitioner's denials of involvement in the shooting.  Petitioner then made a verbal statement, which Investigator Sims told him to put in writing.  Petitioner signed his handwritten statement at 9:40 p.m.

Petitioner presented an alibi defense at trial.  Petitioner's mother, Georgia Hurst, and his girlfriend, Ebony Stevenson, testified that they were at Stevenson's apartment on the corner of Lambert and Fisher Streets when they heard the gunshots and that Petitioner had left the apartment about an hour earlier.  Petitioner's friend, Larry Henderson, testified that he was with Petitioner at Stevenson's apartment in the afternoon, but he left and returned at about 6:30 p.m. He stayed for about half an hour, then went to the liquor store with Petitioner, Dale Dixon, and Lonnie White, to Tamiko Sanders' home, to Caberet Hall at 10:30 or 11:00, and to a club called Timbo's sometime after midnight.  Petitioner's aunt, Tamiko Sanders, testified that Petitioner came to visit her just before 7:30 p.m. on February 13, 1999 and stayed late.

At the close of trial, the trial court found Petitioner guilty of first-degree murder and felony firearm.  The trial court subsequently sentenced Petitioner to life imprisonment and a consecutive term of two years imprisonment on those convictions.

## II.   **Procedural History**

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals essentially raising the same claims contained in his habeas petition.  The court affirmed his convictions.  *People v. Hurst*, No. 230517, 2002 WL 550462 (Mich. Ct. App. April 12, 2002)

7

(unpublished).  Petitioner then filed an application for leave to appeal with the Michigan

Supreme Court raising the same claims, which was denied.  *People v. Hurst*, 467 Mich. 913, 654

N.W.2d 333 (2002).

Petitioner dated the present petition for writ of habeas corpus February 16, 2004 and it

was filed by the Court on March 8, 2004.  Petitioner asserts the following claims:  (1) the trial

court erred in denying Petitioner's motion to suppress his statement where the evidence indicated

that the statement was not made freely or voluntarily, (2) the prosecutor failed to demonstrate

due diligence in producing material witness Lonnie White, (3) there was insufficient evidence to

sustain the first-degree murder conviction where the great weight of the evidence was

inconsistent with the judge's verdict, (4) the court erred in denying Petitioner's motion to

dismiss where the prosecutor requested numerous delays and adjournments to produce a police

officer, and (5) the court erred in allowing the prosecutor to continuously mention the fact that

Petitioner was administered a polygraph.  Respondent filed an answer to the petition on

September 17, 2004 asserting that it should be denied for lack of merit.  Respondent has filed a

reply to that answer on October 7, 2004.

**III.    <u>Standard of Review</u>**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), codified at 28 U.S.C. § 2241 *et seq*., govern this case because Petitioner filed his

habeas petition after the AEDPA's effective date.  *See Lindh v. Murphy*, 521 U.S. 320, 336

(1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings unless
> the adjudication of the claim--

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "In order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require

9

citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

Lastly, this Court must presume that state court factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.** **Analysis**

A. Involuntary Confession Claim

Petitioner first claims that he is entitled to habeas relief because his handwritten statement, which was admitted into evidence against him at trial, was involuntary.

The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions. *See Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986). A confession is considered involuntary if: (1) the police extorted the confession by means of coercive activity; (2) the coercive activity was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne "because of the coercive police activity in question." *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988).

The voluntariness of a confession is a mixed question of law and fact. *See Thompson v. Keohane*, 516 U.S. 99, 108-11 (1995). In determining whether a confession is voluntary, the

10

ultimate question is "whether, under the totality of the circumstances, the challenged confession

was obtained in a manner compatible with the requirements of the Constitution." *Miller v.*

*Fenton*, 474 U.S. 104, 112 (1985). Those circumstances include:

> 1.   Police Coercion (a "crucial element")
> 2.   Length of Interrogation
> 3.   Location of Interrogation
> 4.   Continuity of Interrogation
> 5.   Suspect's Maturity
> 6.   Suspect's  Education
> 7.   Suspect's Physical Condition & Mental Health
> 8.   Whether Suspect Was Advised of Miranda Rights

*Withrow v. Williams*, 507 U.S. 680, 693-94 (1993); *Abela v. Martin*, 380 F.3d 915, 928 (6th Cir.

2004). All of the factors involved in the giving of the statement should be closely scrutinized.

*Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). Without coercive police activity, however,

a confession should not be deemed involuntary. *Connelly,* 479 U.S. at 167 ("coercive police

activity is a necessary predicate to the finding that a confession is not 'voluntary' within the

meaning of the Due Process Clause"). The burden of proving that a confession was obtained

involuntarily rests with the petitioner. *Boles v. Foltz*, 816 F.2d 1132, 1136 (6th Cir. 1987).

Voluntariness need only be established by a preponderance of the evidence. *Id.*

In this case, the Michigan Court of Appeals concluded that Petitioner's written

statement was voluntary, finding that Petitioner had failed to demonstrate police coercion. The

court also found that Petitioner knowingly, intelligently, and voluntarily waived his rights in

submitting to police questioning, did not request that the questioning cease, and did not

otherwise re-assert his waived rights. *Hurst*, 2002 WL 550462 at *1.

Having reviewed the record, this Court is convinced that the state court's determination

that Petitioner's confession was voluntary is neither contrary to United States Supreme Court

11

precedent nor an unreasonable application of federal law or the facts.  First, Petitioner has failed

to establish police coercion.  Although Petitioner testified that one officer yelled at him and that

the officers continued to question him despite his claims of innocence, the police officers denied

threatening him or making promises to him to induce him to make his written statement.

Petitioner has not shown that he was physically injured or that any such conduct induced him to

give a statement against his will.  The state court found the police testimony credible as to the

circumstances giving rise to Petitioner's written statement.  The credibility of witnesses and

whether in fact the police engaged in coercive activity fall within the category of issues to

which the presumption of correctness is applied.  *See* 28 U.S.C. § 2254(e)(1); *Miller*, 474 U.S.

at 112; *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (deferring to state court's finding

that police officer testimony regarding voluntariness of statement was credible); *McQueen v.*

*Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996); *see also Marshall v. Lonberger*, 459 U.S. 422, 434

(1983) (federal habeas courts do not redetermine the credibility of witnesses whose demeanor

has been evaluated by the state court).  Petitioner has not rebutted this presumption with clear

and convincing evidence.  Accordingly, Petitioner has failed to establish that he was subject to

police coercion sufficient to overcome his will.

Moreover, the record indicates that Petitioner was 25 years old at the time he made his

handwritten police statement, could read and write, and had a 10th grade education.  Petitioner

was advised of his *Miranda* rights by three different police officers, stated that he understood

those rights, and signed a constitutional rights waiver form.  There is no evidence that

Petitioner's physical or mental condition was impaired at the time he gave his statement.

Although Petitioner was in custody for over 30 hours before he gave his written statement, he

ate at least one meal, slept for eight hours, and was not continuously questioned by police

12

officers.  Petitioner testified that he was denied telephone access and shower facilities while in custody, but he has not shown that he was deprived of any necessity for a significant period of time.  Accordingly, having scrutinized the relevant factors, the Court is satisfied that Petitioner's confession was voluntary and that his constitutional rights were not violated by the admission of his handwritten statement into evidence at trial.  Habeas relief is not warranted on this claim.

B.    Due Diligence Claim

Petitioner next claims that he is entitled to habeas relief because the prosecutor failed to demonstrate due diligence in attempting to produce witness Lonnie White.

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him.  "The  main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."  *Davis v. Alaska*, 415 U.S. 308, 315 (1973).  The prosecution in a criminal trial must make a good faith effort to produce relevant witnesses.  *See, e.g., Barber v. Page*, 390 U.S. 719, 724-25 (1968).  The standard for evaluating whether the prosecution has made a good faith effort to produce a witness is one of reasonableness.  *Ohio v. Roberts*, 448 U.S. 56, 74 (1990).  The failure to produce a relevant witness only serves as a basis for habeas corpus relief if, under federal constitutional law, the petitioner is denied a fundamentally fair trial.  *See Moreno v. Withrow*, 61 F.3d 904, 1995 WL 428407, *1-2 (6th Cir. 1995) (failure to call *res gestae* witness did not render trial fundamentally unfair and did not constitute prosecutorial misconduct).

In this case, the Michigan Court of Appeals found Petitioner's claim to be without merit because the prosecution and police exercised due diligence in attempting to produce Lonnie White to testify at trial.  *Hurst*, 2002 WL 550462 at * 2.

13

This Court agrees and finds that the Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.  The record demonstrates that the police contacted Lonnie White's relatives, inquired into his last known home and work addresses, and checked with various state agencies in an attempt to locate him.  Given such evidence, the Court concludes that the prosecution made reasonable efforts to produce the witness and that Petitioner's due process rights were not infringed by his non-production at trial.

Further, even if the failure to produce the witnesses violated Petitioner's constitutional rights, Petitioner is not entitled to relief from this Court.  For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also O'Neal v. McAninch*, 513 U.S. 432, 445 (1995) (habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon jury's verdict).  Harmless error analysis applies to Confrontation Clause errors.  *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).  Given the other evidence presented at trial, particularly Petitioner's confession and the testimony of Freddie Putnam and Jackie Pritchard, there was ample evidence for the trial court to find Petitioner guilty of first-degree murder and felony firearm beyond a reasonable doubt.  Petitioner has not shown that the testimony of the unavailable witness was crucial or beneficial to his defense such that its omission had a substantial or injurious influence or effect on the verdict.  He is thus not entitled to habeas relief on this claim.

C.    Insufficient Evidence Claim

Petitioner also claims that he is entitled to habeas relief because there was insufficient

14

evidence to support his first-degree murder conviction where the great weight of the evidence was inconsistent with the judge's verdict.

As an initial matter, the Court notes that a federal habeas court has no power to grant habeas relief on a claim that a state conviction is against the great weight of the evidence. *See Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir.1985); *Crenshaw v. Renico*, 261 F. Supp. 2d 826, 834 (E.D. Mich. 2003) (Edmunds, J.). Such a claim is not of constitutional dimension for habeas corpus purposes unless the record is so devoid of evidentiary support that a due process issue is raised. *See Cukaj v. Warren*, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2003) (Gadola, J.). Such is not the case here. Habeas relief is not warranted on this claim.

Further, to the extent that Petitioner raises an insufficient evidence claim, he is also not entitled to habeas relief. In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Because a claim of insufficiency of the evidence presents a mixed question of law and fact, *Huynh v. King*, 95 F.3d 1052, 1059 (11th Cir. 1996); *Maes v. Thomas,* 46 F.3d 979, 988 (10th Cir. 1995), this Court must determine whether the state court's application of the *Jackson* standard was reasonable.

Under Michigan law, first-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. *People v. Schollaert*, 194 Mich. App. 158, 170, 486 N.W.2d 312 (1992). Premeditation and deliberation require sufficient time to allow the defendant to take a second look. *Id.* The time interval may be minimal –  merely seconds – depending upon the circumstances of the killing.

15

*People v. Berthiaume*, 59 Mich. App. 451, 456, 229 N.W.2d 497 (1975). Premeditation and deliberation may be established by evidence of "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *Schollaert*, 194 Mich. App. at 170. Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of the crime, *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including a defendant's intent or state of mind. *People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997). Use of a lethal weapon supports an inference of an intent to kill. *People v. Turner*, 62 Mich. App. 467, 470, 233 N.W.2d 617 (1975).

Applying the *Jackson* standard, the Michigan Court of Appeals in this case concluded that the prosecution presented sufficient evidence to support Petitioner's convictions. *Hurst*, 2002 WL 550462 at *2. This Court agrees and finds that the Michigan Court of Appeals' decision is neither contrary to nor an unreasonable application of *Jackson* or of the facts. As noted by the Michigan Court of Appeals, the verdict was supported by Petitioner's confession, the evidence that Petitioner had pointed a gun at the victim during a prior confrontation, and the relative weakness of his alibi defense. Given such evidence, a rational factfinder could reasonably conclude that Petitioner committed the crime and that he acted with sufficient premeditation and deliberation.

Petitioner's insufficient evidence claim challenges the credibility and weight to be accorded the evidence presented at trial. However, it is well-settled that "[a] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v.*

16

*Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983). It is the job of the jury, not a federal habeas court, to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). Given the evidence presented at trial, this Court finds that the Michigan Court of Appeals' determination that a rational trier of fact could have found the elements of first-degree murder and felony firearm beyond a reasonable doubt was reasonable. Habeas relief is not warranted on this claim.

  D. <u>Trial Delay Claim</u>

  Petitioner next claims that he is entitled to habeas relief because the prosecutor requested and the trial court granted continuances and a six-day adjournment to produce Detroit Police Investigator Andrew Sims.

  A trial court has broad discretion in determining whether to grant or deny a motion for a continuance or adjournment in a criminal case. *See, e.g., Unger v. Sarafite*, 373 U.S. 575, 589 (1964). When a habeas petitioner challenges the grant or denial of such a request, not only must there have been an abuse of discretion, the trial court's decision "must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process." *Bennett v. Scroggy*, 793 F.2d 772, 774-75 (6th Cir. 1986).

  The Michigan Court of Appeals concluded that the trial court did not abuse its discretion in granting the prosecution's requests for two continuances and a six-day adjournment mid-trial because Investigator Sims was a material witness and Petitioner failed to establish that he was prejudiced by the delay. *Hurst*, 2002 WL 550462 at *3.

  Having considered the matter, the Court finds that the Michigan Court of Appeals' decision is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law or the facts. The trial court's actions in granting the two continuances

and a six-day adjournment were reasonable given the importance of Investigator Sims'

testimony and the fact that there is no evidence of bad faith or intentional delay by the

prosecution.  Courts have ruled that similar and even lengthier mid-trial delays pass

constitutional muster.  *See Cooper v. Costello*, 112 F.3d 503, 1997 WL 219083, *1 (2nd Cir.

1997) (unpublished) (six-week delay caused by defense counsel's illness); *see Hamilton v.*

*Vasquez*, 17 F.3d 1149, 1159 (9th Cir. 1994) (two-week delay for trial judge's winter vacation);

*United States v. Pandozzi*, 878 F.2d 1526, 1534 (1st Cir. 1989) (one-week adjournment for death

of juror's father); *Bell v. Duckworth*, 861 F.2d 169, 170 (7th Cir. 1988) (four-day recess for

Thanksgiving holiday).  More importantly, Petitioner has provided no support for his assertion

that he was prejudiced by the continuances or the six-day adjournment of trial.  Conclusory

allegations, without evidentiary support, do not provide a basis for habeas relief.  *See, e.g.,*

*Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998) (conclusory allegations of ineffective

assistance of appellate counsel do not warrant habeas relief); *see also Wogaman v. Wells*, 884

F.2d 1393, 1989 WL 106578, *5 (6th Cir. 1989) (unpublished) (denying habeas relief where

petitioner failed to show that pre-trial or mid-trial delays were prejudicial – "a critical and

essential consideration").  Habeas relief is not warranted on this claim.

       E.     <u>Admission of Polygraph Testimony Claim</u>

      Lastly, Petitioner claims that he is entitled to habeas relief because the trial court

allowed the prosecutor to continuously mention that Petitioner was administered a polygraph

examination and such evidence is inadmissible under Michigan law.

      As an initial matter, the Court notes that the admissibility of polygraph evidence is

generally a state law matter which does not raise issues of constitutional magnitude cognizable

on habeas review.  *See Weston v. Dormire*, 272 F.3d 1109, 1113 (8th Cir. 2002); *Middleton v.*

18

*Cupp*, 768 F.2d 1083, 1085-86 (9th Cir. 1985); *People v. Perini*, 659 F.2d 730, 734-35 (6th Cir. 1981).  Furthermore, alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief.  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994).

In this case, the Michigan Court of Appeals noted that evidence that a polygraph was conducted is inadmissible under Michigan law, *see, e.g., People v. Ray*, 431 Mich. 260, 265, 430 N.W.2d 626 (1988), but concluded that any error with regard to the polygraph testimony was harmless given the evidence against Petitioner, including his uncoerced handwritten confession.  *Hurst*, 2002 WL 550462 at *3.

Having reviewed the record, this Court concludes that the Michigan Court of Appeals' decision is neither contrary to United States Supreme Court precedent nor an unreasonable application thereof.  Assuming that the trial court erred in allowing testimony referencing the polygraph examination and, indirectly, its results, such error was harmless.  As noted *supra*, for purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 637; *see also O'Neal*, 513 U.S. at 445. Given the other evidence presented at trial, particularly Petitioner's confession and the testimony of Freddie Putnam and Jackie Pritchard, there was ample evidence for the trial court to find Petitioner guilty of first-degree murder and felony firearm beyond a reasonable doubt without regard to the polygraph testimony.  Habeas relief is not warranted on this claim.

19

**V.**    <u>Conclusion</u>

For the reasons stated, this Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

When a federal district court denies a habeas claim on procedural grounds without addressing the claim's merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85.

For the reasons stated *supra*, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to each of his habeas claims. No certificate of appealability is warranted in this case nor should Petitioner be granted leave to

20

proceed on appeal *in forma pauperis*.  *See* Fed. R. App. P. 24(a).  Accordingly;

       **IT IS ORDERED** that the petition for writ of habeas corpus and Petitioner's motion for

summary judgment are **DENIED WITH PREJUDICE**.

       **IT IS FURTHER ORDERED** that a certificate of appealability and leave to proceed on

appeal *in forma pauperis* are **DENIED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  May 24, 2005

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record and pro se petitioner by electronic means or U.S. Mail on May 24, 2005. <br><br> s/Carol A. Pinegar <br> Deputy Clerk |

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

RAYMOND HURST,

                Petitioner,

                                    CASE NO. 04-CV-70863-DT

v.                                  HONORABLE VICTORIA A. ROBERTS

ANDREW JACKSON,

                Respondent.

_____/

## **<u>JUDGMENT</u>**

The above-entitled matter having come before the Court on a Petition for Writ of Habeas

Corpus, Honorable Victoria A. Roberts, United States District Judge, presiding, and in

accordance with the Opinion and Order entered on this date;

**IT IS ORDERED AND ADJUDGED** that the Petition for Writ of Habeas Corpus is

**DENIED** and **DISMISSED WITH PREJUDICE.**

**SO ORDERED.**

                                 **<u>S/Victoria A. Roberts</u>**
                                 **Victoria A. Roberts**
                                 **United States District Judge**

**Dated:  May 24, 2005**

---

**The undersigned certifies that a copy of this document was served on the attorneys of record & pro se petitioner by electronic means or U.S. Mail on May 24, 2005.**

**<u>s/Carol A. Pinegar</u>**
**Deputy Clerk**

---